IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ) Case No. 24 CR 357-1
)
v. )
)
CHRISTOPHER YATES, ) Chicago, Illinois
) April 10, 2025
Defendant. ) 9:08 a.m.

TRANSCRIPT OF PROCEEDINGS - MOTION
BEFORE THE HONORABLE STEVEN C. SEEGER

APPEARANCES:

For the Government: HONORABLE ANDREW S. BOUTROS
UNITED STATES ATTORNEY
BY: MS. JENNIFER S. CHANG
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604

For the Defendant: LEONARD TRIAL LAWYERS, LLC
BY: MR. MICHAEL I. LEONARD
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60602

Court Reporter: AMY M. KLEYNHANS, CSR, RPR, CRR
Official Court Reporter
219 S. Dearborn Street, Room 2318A
Chicago, Illinois 60604
Telephone: (312) 818-6531
amy_kleynhans@ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK: 24 CR 357, USA versus Christopher Yates.

THE COURT: All right. Come on up, folks.

Good morning, everybody.

Let's get everyone's appearances on the record, if you would, please.

Start with counsel for the government.

MS. CHANG: Yes, Your Honor.

Good morning.

Jennifer Chang for the United States.

THE COURT: Good morning.

MR. LEONARD: Good morning, Your Honor.

Mike Leonard for Mr. Yates.

THE COURT: All right, folks. We were here just a hop, skip, and a jump ago -- I think two weeks ago -- on a motion to release Mr. Yates from custody. So I'm pretty well familiar with the lay of the land with him.

We got a motion filed a couple of days ago for a temporary furlough in light of the fact that his mother passed away.

You know, before I say anything else, I'm so sorry to hear that his mom passed away.

MR. LEONARD: Thank you, Judge.

THE COURT: All of us are blessed with one, and it hurts to lose them every time.

MR. LEONARD: Yep.

THE COURT: So my condolences to Mr. Yates. I was sorry to read that. I think it's one of the many, many tough things about incarceration, is you have things like this pop up, you know. So my condolences to him and his family.

Do you want to go ahead, Mr. Leonard, and just make your pitch here. I've read your papers, obviously, and I'm familiar with the situation.

But go ahead.

MR. LEONARD: Sure, Judge.

I mean we would take -- I know my associate filed and asked for the wake and funeral.

THE COURT: Yeah.

MR. LEONARD: We would be satisfied with him just getting those hours for the funeral on Saturday.

What can I say, Judge? I mean, he has a limited criminal history. I understand the seriousness of the offense. This is a difficult time for him and his family. I do believe the Court can trust him for these very limited hours to come and go to the MCC. And I think it's been done successfully with numerous other defendants in this district. I haven't seen an instance where someone has absconded or not complied. And I think it's partly because it's such an important thing. And if the Court chose faith in them, I think they have shown faith back to the Court. And I've seen it succeed time and

time again.

THE COURT: Have you seen it succeed time and time again when somebody is charged with murder?

MR. LEONARD: I don't know if I've had a murder case here where that's happened, Judge --

THE COURT: Yeah.

MR. LEONARD: -- but certainly very serious crimes.

THE COURT: Yeah, I mean, I get these requests pretty frequently, and I sometimes grant them. Usually they're, you know, drug distribution offenses or something.

I mean, I'm not familiar -- I'm not familiar with another case where someone was let out for a funeral when there is a murder-based charge in the case. It doesn't mean it didn't happen. I'm just telling you I didn't --

MR. LEONARD: Understood.

THE COURT: Are you -- and I don't mean that rhetorically.

MR. LEONARD: No, I can't off the top of my head.

THE COURT: Yeah.

MR. LEONARD: I mean, I know I've had cases where people are facing draconian sentences of --

THE COURT: Yeah.

MR. LEONARD: -- ten, 20, 30 years, or whatever, and the same motive --

THE COURT: Yeah.

MR. LEONARD: -- to flee would be existent --

THE COURT: Yeah.

MR. LEONARD: -- and the same potential danger to the community.

You know, Mr. Yates was a mailman, and he doesn't have an extensive criminal history. It's, you know, a murder-for-hire situation, alleged, which we contest vigorously.

THE COURT: Yeah.

MR. LEONARD: But I understand the Court's concerns. I do believe that he's a gentleman that can be trusted with these several hours.

THE COURT: Okay. Ms. Chang.

MS. CHANG: Your Honor, this is a sad situation, I agree. The government does object to his release, just as we've discussed, based on the nature of the offense. This is a murder-for-hire case. He's been charged with murder for hire regarding two different victims. And in this case, not only did he solicit the murder of these individuals, but he -- you know, obviously, as per the charge requires, paid some money as a down payment, but also transferred a firearm to be used during one or both of these murders.

Based on the violent nature of the offense that the defendant is charged with, we do have to object, Your Honor.

THE COURT: And as I recollect things, those intended

targets were witnesses in another criminal proceeding; is that right?

MS. CHANG: That's correct. They were witnesses in a state murder proceeding.

THE COURT: Right. Okay.

Anything else, Mr. Leonard, you want to say?

MR. LEONARD: No, Judge.

THE COURT: Okay. So I understand the motion. I'm going to deny the motion. It's not because I don't feel sorry for Mr. Yates. I do.

MR. LEONARD: I understand that, Judge.

THE COURT: There is definitely humanity that I bring into this motion on my end, I can tell you that for sure. I feel sorry for him.

MR. LEONARD: Thank you.

THE COURT: But the reality is I've got a -- I've got responsibility not just for him but, in some sense, for the community -- in every sense for the community when I handle a request like this.

I do have to consider the potential danger out there, and I find that he's -- for the reasons I've already articulated, he is a threat to the community. He's charged with a murder-for-hire plot involving witnesses in a criminal proceeding in state court.

He is entitled to the presumption of innocence. Maybe

he didn't do it. Maybe he's got good defenses. I acknowledge all that. But I can just go with what I've got. And given the nature of the charges, I cannot in good conscience let him out even for something as serious as the funeral of his mother.

So with some -- some amount of regret here -- that's probably the wrong word. But I'm acknowledging the humanity of the situation. I take no pleasure in keeping him incarcerated to miss his mother's funeral. That's --

MR. LEONARD: I understand.

THE COURT: It's compounding a tough thing. It's hard enough to lose your mom. It's going to be harder if he can't be there. So I want to acknowledge that.

But I've got to make the best decision I can after considering the threat to the community. And I find that the threat is too significant to allow him to go to something like this. So the motion is going to be denied.

Please do pass along my condolences.

I am hopeful, Ms. Chang, that we can do something for him. Maybe he can watch on video. We did that a lot in COVID. I got this all the time during COVID, where people were able to participate.

Is that something you could maybe talk to the good folks who are holding him and see if they could facilitate something like that?

MS. CHANG: Your Honor, I can certainly make a call to

the marshals to see if something like that could be done.

THE COURT: Yeah, I would appreciate if you could do that. If you could pass along to the marshals service that "Judge Seeger would appreciate it if you made some arrangements for him to participate."

I don't know if they still do that. Maybe they're not equipped to do that anymore. I think it would be appropriate and kind for the marshals service to do that if they can, you know. Because I -- I would like him to feel like he was able to participate. Even if it's not as much as he wanted, I would like him to be able to be there. I think it would be good for him as a person.

Okay? Would you --

MS. CHANG: Yes, Your Honor.

THE COURT: -- mind passing --

MS. CHANG: I can certainly --

THE COURT: -- that along?

MS. CHANG: -- inquire and inform defense and the Court what I learn.

THE COURT: Okay. I appreciate that.

Anything else, folks, we need to talk about? I know we've probably got another date on the calendar. I didn't look up what it is, but --

MR. LEONARD: Yeah, nothing at the moment.

Judge, I appreciate you hearing us, and I appreciate

you making the gesture to try to get him to participate by video. If that happens, that would be huge for him as well.

THE COURT: Okay.

MR. LEONARD: So thank you.

THE COURT: Well, I'm sure she's on it.

And do the best you can.

And whatever our next date is, we'll see you down the road.

All right. Thank you, folks.

MR. LEONARD: Thank you --

MS. CHANG: Thank you.

MR. LEONARD: -- Judge. Have a good weekend.

THE CLERK: All rise.

(Proceedings concluded at 9:15 a.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Amy M. Kleynhans* ____________ *4/15/2025* ________
Amy M. Kleynhans, CSR, RPR, CRR Date
Official Court Reporter