IN THE UNITED STATES DISTRICT COURT.
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ) Case No. 24 CR 357-1
)
v. )
)
)
CHRISTOPHER YATES, ) Chicago, Illinois
) September 26, 2025
Defendant. ) 10:29 a.m.

TRANSCRIPT OF PROCEEDINGS - MOTION
BEFORE THE HONORABLE STEVEN C. SEEGER

APPEARANCES:

For the Government: HONORABLE ANDREW S. BOUTROS
UNITED STATES ATTORNEY
BY: MS. KRISTEN E. MORAN
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

For the Defendant: HAYWOOD MONTE LAW OFFICES
THE WESTSIDE JUSTICE CENTER
BY: MS. TIA L. HAYWOOD
601 South California Avenue
Chicago, Illinois 60612

ALSO PRESENT:
Ms. Jordan Herrera, Pretrial Services

Court Reporter: JENNIFER COSTALES, CRR, RMR, CRC
Official Court Reporter
219 South Dearborn Street, Room 1714
Chicago, Illinois 60604
Telephone: (312) 435-5895
jenny.uscra@yahoo.com

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE COURTROOM DEPUTY: 24 CR 357, USA versus Christopher Yates.

THE COURT: Come on up, folks. Good morning, everybody. Good morning. All right. Let's get everyone's appearance on the record, if you will, please. Start with counsel for the government.

MS. MORAN: Yes, Your Honor. Good morning. Kirsten Moran on behalf of the United States.

THE COURT: Good morning.

MS. HAYWOOD: Good morning. Attorney Tia Haywood on behalf of Christopher Yates.

THE COURT: Good morning, Ms. Haywood.

And good morning, Mr. Yates.

THE DEFENDANT: Good morning, sir.

THE COURT: And Pretrial.

PRETRIAL SERVICES OFFICER: Good morning. Jordan Herrera on behalf of Pretrial Services.

THE COURT: Good morning to you. Pretrial always does a terrific job. Thank you for being here.

Speaking of doing a terrific job, I want to welcome the deputies who are kind enough to be here today. I'd say you folks are the best people in the building, best people in the business. I appreciate everything you guys do.

Folks, we're here for a hearing. We set today for a

check-in. We technically filed -- I'm sorry, set it for yesterday, but I had to move it in light of the mandatory training yesterday. So we had to move it to today.

Related to that, the government filed a motion for an exclusion of time. I think it's just a one-day exclusion of time. Any objection to that?

MS. HAYWOOD: No objection, Your Honor --

THE COURT: All right. So that's going to --

MS. HAYWOOD: -- because we did file motions.

THE COURT: Yeah, yeah. So that is going to be granted.

I also wanted to talk about the couple other motions that were filed. There was a motion to dismiss that was filed, docket number 77, as well as a motion for pretrial release, docket number 78.

Let me take the motion for release up first.

MS. HAYWOOD: Regarding that, Your Honor, I'm sorry, I'll be seeking leave to correct or amend it, because it had the incorrect case number. I had caught the error as well as someone from the -- someone also emailed me, I believe it could have been from your office, indicating that I would need to seek leave from Your Honor obviously to refile it.

I notified the government. And I don't know if the -- I believe she doesn't have any objections.

MS. MORAN: That's correct.

MS. HAYWOOD: But she can speak for herself.

THE COURT: Well, so thank you for that.

So I'm looking at the motion for pretrial release. It's filed on the docket. The only mistake that I see is it says "Judge Blakey" in the caption and says case number 20 CR 422 in the caption. You know, these things happen.

As far as I'm concerned, I don't think it needs to be refiled --

MS. HAYWOOD: Okay.

THE COURT: -- just because of the mistake in the caption, unless somebody is missing something, I don't think it's going to be confusing.

MS. MORAN: I agree, Judge.

MS. HAYWOOD: Okay.

THE COURT: All right. It will save you some work. So I will accept the filing. So thank you for that though.

MS. HAYWOOD: Thank you, Your Honor.

THE COURT: So here is the question I have for you. Mr. Yates has challenged his pretrial detention a couple of times, and you've gotten rulings a couple of times from a couple of different judges.

I, in particular, have reached this issue at least twice.

MS. HAYWOOD: Yes.

THE COURT: Me personally.

MS. HAYWOOD: Yes.

THE COURT: In addition to what Judge McShain has done. I heard oral argument on this and issued a ruling on March 20, 2025, docket number 55. We had an extended conversation about that motion at the time.

I also denied a motion for leave for a temporary furlough on April 10, 2025, docket number 59.

So I've already reached the issue of pretrial detention a couple of times above and beyond what Judge McShain has done.

So I guess my overarching question is why this is any different, if at all. Maybe you're filing a motion because you feel like you want to preserve something or maybe something has changed. I don't know if the new fact is the aunt's willingness to help him. I don't know. But I was just unsure why we're going over this again.

So I'll turn it over to defense counsel. I'm happy to hear from you. Go ahead.

MS. HAYWOOD: Yes, Your Honor. We are arguing for a change of circumstances. We're also presenting specific conditions that can mitigate, a combination of conditions that can mitigate the risk.

We're also -- I went and reviewed over the previous detention hearings, because I did not want to waste Your Honor's time. You had went over it numerous times. I believe

one of the previous hearings was narrowly tailored to a temporary furlough regarding the illness and the funeral of his mother.

THE COURT: Yeah.

MS. HAYWOOD: The other one, she was to serve as a custodian. Now we have three healthy able-bodied custodians that's willing to sign a bond. One of them was actually reviewed by pretrial themselves, Arceline, and she's here.

And in a show of good faith in lieu of whether or not -- I wasn't sure if we were going do the hearing today. I was obviously intending to give the government an opportunity to say if they were -- if they wanted to file a written motion. I'm not sure how Your Honor handled things.

But in lieu of, out of good faith, Ms. Arceline is here. And she also brought his passport. So for your Court's consideration, she is willing and able to also turn that over for Your Honor.

And the family did indicate that he had traveled internationally. I believe that wasn't -- that was possibly unknown.

In regards to flight risk, I did address some of the issues or open-ended questions I felt like Your Honor had at some of the previous hearings. So I wanted to present a more comprehensive approach to this whether or not there are conditions, the danger to the community, just addressing the

factors in totality.

THE COURT: Let me ask you this. This case involves an allegation of a murder-for-hire scheme, doesn't it?

MS. HAYWOOD: Yes.

THE COURT: And wasn't the intended victim a witness in a case?

MS. HAYWOOD: Yes. It was a state case. They were an intended witness. It wasn't clear based on the affidavit to the criminal complaint, but they seemed to be, one of them seemed to be unidentified and the other one only limitedly identified by name.

THE COURT: Right. So let me just back up. Mr. Yates has a presumption of innocence.

MS. HAYWOOD: Yes.

THE COURT: And I'm going to give him that. But he is accused of participating in a murder-for-hire scheme involving a witness in a state court case. Do I have that right?

MS. HAYWOOD: Yes.

THE COURT: So doesn't that give you a little pause about getting him out of prison, out of jail?

MS. HAYWOOD: No, Your Honor, because the state investigators worked with the government to identify this witness, and obviously they're on notice now and they can secure -- that's what we have witness protection for. They

can secure the witness and protect the witness as need be.

And Mr. Yates, obviously, the Court's concern is that he show up to this case so the Court can ensure that, the Court can ensure that specific conditions are put in place that can assure that Mr. Yates appears and submits to Your Honor's authority for this case.

As far as that state case, the state investigators were notified about this witness. They were working with the federal government agents. Our contention is that the state and the government can continue to work together. He'll be under authority of the Court to ensure that there is no crossed wires or crossed paths when it comes to that witness and protecting the witness and it comes to Mr. Yates.

THE COURT: Okay. Apart from the arrival of his aunt, the willingness of his family to help him, is there anything new?

MS. HAYWOOD: There was specific conditions that was presented. There was also case law that kind of --

THE COURT: What conditions?

MS. HAYWOOD: So there is conditions of home confinement, GPS monitoring, telephonic monitoring. I provided an entire list of conditions in the conditions section that Your Honor can consider, whether or not -- how those could go into play.

In the pretrial services report I got this morning,

they are willing to co-sign a bond. He can be restricted when it comes to activities, locations. We're willing to work with the government when it comes to -- if they have that state witness in a witness protection, locations that he has to stay away from, under no circumstances can he go.

And I specifically mentioned that in a murder-for-hire plot, it requires the use of another individual. That individual is already a government witness. So realistically, based on the facts of this case on its own merit, that witness was already a government witness. They were not going to actually carry out the murder. It was allegedly, allegedly going based on the facts caught ahead of time. So the risk has been, our argument, ameliorated by that factor.

And I was going based on the affidavit that was attached to the complaint. It was very thorough. It had pictures of the firearm. The firearm I mentioned also was not a high capacity firearm. As we know in some of these cases, we get firearms that are converted into fully automatic, have silencers. There was just different factors that I felt like weren't addressed at previous hearings.

THE COURT: All right. What does the government think?

MS. MORAN: Your Honor, as a threshold matter, it's our position that the hearing is not in a position to even be

reopened at this point. Under 3142(f), it does require there is two factors, information exists that wasn't known to defense at the time of the hearing and that has a material bearing on the issue of the conditions of release regarding safety of the community in particular here. So that's sort of the threshold matter.

I did review the transcript from Your Honor's previous hearings as well as the motions filed. There is nothing new in these materials that have been filed for this hearing. In particular, I should note the proposed third-party custodian was assessed by pretrial for that April 10th proceeding. It was for the furlough. It wasn't for, as counsel notes, a full-scale pretrial release. But it was a person who was already presented as a third-party custodian to pretrial.

I'd also note the address for the defendant that's being proposed is the same address for all two prior motions that Your Honor heard as well as the address that the defendant was living at at the time of the offense.

A couple things just in response to dangerousness to the community. Someone who is willing to hire someone to murder, not just one, but two witnesses in a state case is a danger to the community. The fact that the government was able to intervene and prevent that from happening doesn't mean that the defendant isn't any less dangerous. It just means

that the government was able to prevent it.

So the fact that someone is willing to provide money, to provide a firearm, to in fact attempt to have these two people murdered, it doesn't mean that they're not going to go out and hurt other individuals. In fact, it shows that this person has a callousness to human life and to the justice system that isn't mitigated by any possible conditions that the Court could order.

Your Honor, we are willing to go into kind of more details on the 3553(a) factors if you'd like a more fulsome showing on those, but I think as an initial matter we have this threshold question of whether the hearing is even in a position to be reopened.

THE COURT: Okay. What does pretrial think?

PRETRIAL SERVICES OFFICER: Your Honor, we are recommending detention as noted in previous pretrial reports.

THE COURT: All right. So the motion is denied. I've been over this already. I went over this same ground in March. I went over this pretty carefully.

The nature and circumstances of the alleged offense are sufficient for him to be incarcerated. He's accused of participating in a murder-for-hire scheme involving a witness or witnesses in a state proceeding. I mean, it doesn't get more serious than that.

There are all sorts of other factors we haven't even

talked about here. The alleged offense took place while he was on probation.

I'm concerned when I hear that witnesses are going to be fine because they have to go in the state's witness protection program.

MS. HAYWOOD: Well, Your Honor, that's why we --

THE COURT: Don't interrupt.

MS. HAYWOOD: I'm sorry.

THE COURT: That's not a vote of confidence for me. That's a reason for concern.

He's got a prior firearms offense conviction. You know, I've looked at his criminal record. I went over this already a couple times. So I'm not going to do it again. I'm going to deny it for the reasons previously stated. There is more than enough reason to incarcerate him.

Let's turn to the motion to dismiss, I've read it, docket number 77. Does the government want to file a response?

MS. MORAN: Yes, Your Honor. We'd request 30 days to file a response.

THE COURT: Okay. I go in seven-day increments, so you can have 28.

MS. MORAN: Oh, sure.

THE COURT: Is that good? So you get four weeks from today. I'll give you two weeks for a reply. Let's put the

schedule in.

MS. HAYWOOD: Your Honor, just as another matter, I did mention within the motion to dismiss that we'd be seeking to file a motion to suppress. As I indicated to Your Honor before, you told me I was the third lawyer coming in, and we're not -- I'm not here to delay anything.

THE COURT: Yeah.

MS. HAYWOOD: I just needed an additional opportunity to go over some of the factors that are more specific to discovery when it comes to a motion to suppress or quash arrest.

THE COURT: Okay.

MS. HAYWOOD: So if Your Honor is so inclined, if you wanted to set a schedule for that, I do intend to -- I'm not intending to delay. I wanted to just let Your Honor know so we can get these pretrial motions on file. I'm also prepared to set a potential trial date for Your Honor, because I just do not want to delay.

THE COURT: We have a trial date.

MS. HAYWOOD: Oh, sorry, Your Honor.

THE COURT: We have a trial date. So let's go back to the motion to dismiss. The government has asked for four weeks. Four weeks from today is?

THE COURTROOM DEPUTY: October 24th.

THE COURT: All right. So it's going to be due on

October 24th.

The trial date is?

MS. MORAN: November 17th, Judge.

THE COURT: Yeah.

MS. MORAN: And I do believe there is a standing motion from the prior hearing on moving that trial date.

THE COURT: Well, there was a request, I don't think it was a motion, but it was a discussion point as I remember things.

So let's get the schedule in place. So the response is going to be due, let's actually give her until the Monday of that week, so a little less than four weeks to respond. So the Monday of that week is going to be?

THE COURTROOM DEPUTY: October 20th.

THE COURT: All right. So your response is due on October 20th. Two weeks later is?

THE COURTROOM DEPUTY: November 3rd.

THE COURT: So that's the schedule. So the response is due October 20th. November 3rd is the reply. I can give you time to do a motion to dismiss.

MS. HAYWOOD: Motion to suppress.

THE COURT: Motion to suppress, excuse me. Given where we are with the schedule, can you do it in a week or do you need two weeks?

MS. HAYWOOD: I need more time, because I need to go

over the discovery. I actually got the discovery at the last court date. I need to actually go over it. It's significant, as they mentioned, audio recordings, there is some video recordings. So I have to actually have an opportunity to go over it with Mr. Yates.

THE COURT: What's the basis for the motion to suppress?

MS. HAYWOOD: It would be based on several warrants is my understanding that was obtained in this case for them to monitor the conversations, things of that nature. As I mentioned before, I would need an opportunity to go over the things with Mr. Yates. And I was intended to come in and get these motions on file, because they're pretrial motions obviously, and I wanted to comply with Your Honor not delaying this matter.

THE COURT: All right. What's two weeks from today?

THE COURTROOM DEPUTY: October 10th.

THE COURT: All right. So motions to suppress are due October 10th.

MS. HAYWOOD: Well, Your Honor, I would need more time than two weeks because, as you know, Mr. Yates is incarcerated, and they have them on a very strict shutdown schedule, so the hours --

THE COURT: Well, we've got a November trial date.

MS. HAYWOOD: Well, Your Honor, you --

THE COURT: Hang on. Hang on.

MS. HAYWOOD: -- provided the reply date --

THE COURT: Stop for a second. We've got to make sure we don't talk over each other.

MS. HAYWOOD: I'm sorry.

THE COURT: Okay. We've got a November trial date. That's on the books.

MS. HAYWOOD: We are requesting -- we've requested that that trial date be moved.

THE COURT: Okay.

MS. HAYWOOD: In light of new counsel coming in, we are not going to be prepared to proceed for trial on November 3rd -- I mean in November.

THE COURT: How many witnesses, how many witnesses are there going to be?

MS. MORAN: Your Honor, we would estimate more than five, less than ten.

THE COURT: Okay. Have you given discovery to defense counsel?

MS. MORAN: Yes, Rule 16 discovery.

THE COURT: Okay.

MS. MORAN: That was at the last --

THE COURT: And when did you do that?

MS. MORAN: That was at the last hearing date that we had. It was August 12th, Your Honor.

THE COURT: Okay. So a month and a half ago. How voluminous was the discovery?

MS. MORAN: There is a significant amount of recorded conversations, Judge. I also tendered, as counsel mentioned, search warrants underlying the case, there is some phone data, a phone search warrant as well. So there is a pretty voluminous amount of electronic discovery.

THE COURT: How long are the recordings?

MS. MORAN: At a very, very back-of-the-napkin estimate, maybe 15 hours, 10 hours.

THE COURT: Okay. It's not a lot. How about the paper discovery, how voluminous is it?

MS. MORAN: Your Honor, I don't have, you know, megabyte sizes necessarily, but I can tell you sort of the categories of discovery that there are and how many, you know, approximate warrants that were issued. I would say again there would be -- I can pull up our discovery production index if that would help, but I do think it's a period, there was a period of about three weeks where the activity here occurred. A lot of it had to do with some phone data that warrants were issued for that. There were warrants issued for Mr. Yates' cellphone itself. And there was obviously a production of that material that defense counsel received to review.

THE COURT: Have you gone through the discovery?

MS. HAYWOOD: I haven't gone through the discovery in

its entirety. I went to the MCC. I've looked at the discovery myself enough to address the motion to dismiss. But when it comes to a motion to suppress and a potentiality for a hearing, which is up to Your Honor, I would need the opportunity for the defendant to go over it. He's indicated to me that he hasn't. And I'm concerned about that, that I can just go over it, present the motion myself with no significant impact.

THE COURT: Hang on. Hang on one second.

MS. HAYWOOD: Input. I'm sorry.

THE COURT: Have you listened to the recordings?

MS. HAYWOOD: Not all the recordings, Your Honor. I've started the recordings.

THE COURT: It's only 10 or 15 hours. How much have you listened to?

MS. HAYWOOD: I have listened to about three recordings. I wanted to go over the recordings with Mr. Yates because it's his conversations.

THE COURT: Yeah, but have you listened to it in your office?

MS. HAYWOOD: I haven't listened to all the recordings. I have started to listen to recordings and I've gotten through I believe about three of them, Your Honor.

THE COURT: Okay. For how much time?

MS. HAYWOOD: I can't -- I could only guesstimate the

time. Maybe about, maybe those recordings are about two, two to three hours or so.

THE COURT: How much time have you spent reviewing the written discovery?

MS. HAYWOOD: As far as the written discovery, I had went to the MCC and we started, we went through the complaint. As far as me reviewing the discovery myself, I've reviewed some of the reports. But I would like to significantly go over the discovery with Mr. Yates. That's my main concern.

THE COURT: I guess it feels like you're punting when you keep saying you want to do it with Mr. Yates. It sounds like you haven't looked at it yet and you want to just go over it with Mr. Yates is what it sounds like.

MS. HAYWOOD: No. I have looked at it, Your Honor, which is how I filed the motion to dismiss. However, there is a significant -- when it comes to a motion to suppress and my understanding of how the law operates, it could lead to an evidentiary hearing, for example. If Mr. Yates is inclined and he wants to testify, these are about conversations that he had. So my thing -- and then there is interpretations in the affidavits that are in the criminal complaint about conversations that he allegedly had, words he used and the meanings of those words.

So I would like as to prepare for the case or prepare for any hearing to ask Mr. Yates himself what these words mean

and go down --

THE COURT: Here is what I am trying to get at. You've had the discovery for a month and a half. How much time have you personally spent going through the discovery?

MS. HAYWOOD: I responded, Your Honor. I went through about three hours of the recordings. I have been trying to schedule time so that I can also go through the discovery duality simultaneously with Mr. Yates.

But I have personally went through about two or three hours of the recordings, and I have also reviewed some of the search warrants, which is why I reserved that matter about the motion to suppress and my motion to dismiss. But I would like to be more comprehensive about it when I file it, obviously if the state wanted an opportunity to respond. And obviously we'd be requesting a hearing.

MS. MORAN: Judge, I did want to correct something I said earlier. Apologies. I said August 12th for when I tendered discovery. We had a hearing that day, but Ms. Haywood was not there. It was August 20th that I tendered discovery.

THE COURT: Okay, okay. It sounds like you've had discovery for over a month, and you have spent two to three hours reviewing it since then. Is that what happened?

MS. HAYWOOD: No, Your Honor.

THE COURT: Well, how much time have you spent

reviewing discovery?

MS. HAYWOOD: I've spent approximately about, I would say about 10 hours, because parts of those reviews were with Mr. Yates, but they're not obviously complete. So I will have to go over to the MCC, that's about two, three hours, wait for them to bring him out. They have a shutdown time at 3:00 o'clock. So that's time spent going to see Mr. Yates to go over the discovery. That's time out of the day. And they're only available between 8:00 a.m. to 3:00 p.m. That's what the email I received from MCC regarding when I can see my client.

THE COURT: I mean, trial is going to happen in about seven weeks, give or take. I don't know exactly how many weeks it is between now and November 17th, but today is September 26th. There is a whole month in between. It's over one and a half months.

What is the government's position about the trial date?

MS. MORAN: Your Honor, given the pretrial motions that have been filed and we anticipate will be filed, as well as the period of time in which Ms. Haywood has been on the case, we don't oppose moving the date.

I think initially the date was set as a standby date with a March contemplation for a final trial date, and that's -- we don't have any opposition to the movement of that, understanding, of course, that subsequent conversations

Your Honor has indicated November 17th, but --

THE COURT: I will say this, it creates chaos to move trial dates, because it's not like I have a whole other calendar just waiting for you folks to land someplace else. You know, I mean, it's not as easy as saying, Well, let's just do it a month later, two months later. I've got a whole docket full of other cases who have trial dates.

MS. HAYWOOD: I understand, Your Honor. I apologize. But in lieu of the -- I mean, preserving Mr. Yates' Sixth Amendment rights, and I'm new counsel in the case, I do not want to rush into a trial that we are not prepared for. And it would be over our objection, because we have been adamant since coming into the case, the intention is not to delay. But my review of the docket, there was no significant pretrial motions filed, except for those motions to release.

So we are asking -- we have asked that it be moved. We are tentatively provided a March date. We are not here to just significantly delay.

THE COURT: Are you free in January?

MS. HAYWOOD: I am not, Your Honor. I believe you asked me that one previously. I'll be out of the country.

THE COURT: Okay. The whole month?

MS. HAYWOOD: Pretty much half of the month. I'll be in Egypt.

THE COURT: Okay. What are you proposing for a trial

date?

MS. HAYWOOD: We had proposed end of March. But Your Honor indicated you wanted to go through the calendar first before you confirmed that.

THE COURT: Yeah. It creates chaos to move a trial date. It's not an easy thing.

Is the government ready in March? Are you available in March?

MS. MORAN: Yes, Your Honor.

THE COURT: All right. What is your calendar in March?

MS. HAYWOOD: March 20th. I believe they said a week to March 31st. Any of those, any time between --

THE COURT: I'm not sure that week is available for me.

MS. HAYWOOD: March 23rd to the 31st.

THE COURT: Right. That's what we just covered.

MS. HAYWOOD: Huh?

THE COURT: That's what we just covered.

MS. HAYWOOD: Okay.

THE COURT: I'm not sure that week is available for me.

MS. HAYWOOD: My client indicated that at a previous hearing he believed that Your Honor indicated something about April 23rd. I'm not sure if that's available, but I have

April 20th all the way to 30th, April 1st, April -- the whole month of April is available as well if Your Honor is so inclined. And that week is not available.

THE COURT: What does the government think?

MS. MORAN: Your Honor, we can make ourselves available for a trial any time in 2026.

THE COURT: Okay. I'm going to sit down with my courtroom deputy and go through the calendar and see if we can move it. If I move it, you've just got to do with whatever date I pick.

MS. HAYWOOD: Yes.

THE COURT: And you've got to move everything else around. I mean, I can't lightly move a trial date. And if I move a trial date at someone's request, you've just got to take whatever date I pick. This is not a situation where you just get to pick and choose what you want, because you've got to work with the Court's calendar, too. So I'm going to take that request under advisement. I want to sit down with her one more time, okay.

Here is what we are going to do. We're going to finish the briefing schedule. The motion to suppress is going to be due two weeks from today. That's?

THE COURTROOM DEPUTY: October 10th.

THE COURT: October 10th. I will give you three weeks to respond.

MS. HAYWOOD: Your Honor, we would be respectfully requesting three weeks to file it, October 17th, because as I indicated before, there was the issues with going in there to see Mr. Yates as well as everything else that I have on my calendar.

THE COURT: No. You've got October 10th. You've had plenty of time to review the discovery.

MS. HAYWOOD: Your Honor -- okay.

THE COURT: It's going to be due October 31st.

MS. MORAN: I'm sorry?

THE COURT: The response is due October 31st, and the reply is due November 7th.

I will take the request to move the trial date under advisement. Okay.

MS. MORAN: Your Honor, at this point, because of the amount of time that is in between now and the trial date, are we moving forward as if November 17th is operative?

THE COURT: You should always assume that a trial date is real unless and until a judge says it's not. So I will sit down with her today or early next week and figure it out and let you know promptly, okay. But I'm not going to do it on the fly.

MS. MORAN: Your Honor, I don't believe we have another date set currently, except for the trial date. Would you like to have a status?

THE COURT: Yeah, we're going to have a status hearing the first week of November.

THE COURTROOM DEPUTY: We could do November 4th at 10:00 a.m.

MS. HAYWOOD: That works.

MS. MORAN: That works, Your Honor. We would move to exclude time in the interest of justice through and including November 4th to allow for the pretrial motions that have been under discussion to be filed and briefed and for review of discovery.

THE COURT: Okay. Any objection?

MS. HAYWOOD: No objection.

THE COURT: All right. So I'm going to exclude time in the interest of justice between now and November 4th to allow the parties time to review discovery and prepare for trial and consider pretrial motions.

What else from the government this morning?

MS. MORAN: Nothing further, Your Honor.

THE COURT: What else from defense?

MS. HAYWOOD: That will be over our objection. We have strenuously --

THE COURT: What is over your objection?

MS. HAYWOOD: As far as the -- our contention is the October 10th day, we are objecting to that. We are also objecting to trial in November at previous court dates, and

that will be our standing objection.

THE COURT: Based on?

MS. HAYWOOD: Based on the Sixth Amendment, the defendant has the right to counsel of his choice. Counsel of his choice entered into the case, has indicated for Your Honor that she does not have sufficient -- has not had sufficient time to review things, discovery with defendant for the record. So we have been requesting additional time.

We have requested three weeks instead of the two weeks to file a motion to suppress. So that will be our standing objection, as well as actually getting a new trial date. We have indicated the availability for April of 2026, the whole month. So that would be our --

THE COURT: You joined, you joined the case three months before trial. That's plenty of time to get ready for trial.

MS. HAYWOOD: That would be our standing objection. And I do not believe that is -- based on the nature of the offense, and that that has been used as grounds to not provide Mr. Yates with pretrial release, so obviously the nature is of a serious nature and needs to be taken seriously. Thank you, Your Honor.

THE COURT: Okay. Well, your objection is overruled. You've had plenty of time to prepare. And, you know, the Speedy Trial Act itself contemplates trial within, what, 70

days unless time is excluded?

MS. MORAN: Yes, Judge.

THE COURT: And you've had more than that.

MS. HAYWOOD: But it is, the Speedy Trial Act has to do with defendant's rights, and he can waive those.

THE COURT: Well, there is a public interest, too. And I'm saying going to trial within three months of joining a case is not unheard of. And, frankly, Mr. Yates is the one who retained new counsel. And if new counsel is going to come on board, you've got to come on board with what you've got. So I will take your request to move the trial date under advisement.

MS. MORAN: Just one note, Your Honor, if I could on that? In terms of defense counsel's motion, a little bit more explanation for us not objecting, in fact, agreeing with the motion to move is that pretrial motions, once those are concluded, typically is an opportunity for the parties to get together and discuss potential resolution of the case in order to avoid judicial resources for trial.

THE COURT: You can do that now if you want. I'm not telling you to, but you can do that now.

MS. MORAN: Of course, Your Honor. And typically after we've determined whether or not, you know, what evidence is coming in, that's when -- we certainly can now, as you noted. But the timing of that in terms of the trial date

coming up is rather tight just in general and was another note to make just for consideration and --

THE COURT: Well, we can shorten the briefing schedule. Do you want to do that?

MS. MORAN: Not necessarily. I think we can --

THE COURT: That will give you more time on the back end.

MS. MORAN: Judge, I think the briefing schedule is perfectly fine.

THE COURT: We can have all this done next week if people want, you know.

MS. HAYWOOD: It would be over our objection. We are not prepared to go forward, Your Honor.

THE COURT: Yeah.

MS. HAYWOOD: And even under -- I mean, it would be under duress. And I would not be in a position or feel comfortable or feel like I am adhering to my rules of ethical obligation to my client to proceed in that manner.

THE COURT: Okay. Anything else from the government this morning?

MS. MORAN: No, Your Honor.

THE COURT: Anything else from the defense?

MS. HAYWOOD: No, Your Honor.

THE COURT: Okay. Anything else from pretrial?

PRETRIAL SERVICES OFFICER: No, Your Honor. Thank

you.

THE COURT: Okay. We're adjourned. Thank you, folks.

(Proceedings concluded at 11:03 a.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/JENNIFER COSTALES* November 3, 2025

Jennifer Costales, CRR, RMR, CRC Date
Official Court Reporter