UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER YATES | 24 CR 357<br><br>Judge Steven C. Seeger |

**GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE***

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: /s/Kirsten Moran
KIRSTEN MORAN
MEGAN DONOHUE
Assistant United States Attorneys
United States Attorney's Office
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

Dated: March 19, 2026

# TABLE OF CONTENTS


BACKGROUND ........ 1

I. Motion to Preclude Evidence or Argument Designed to Elicit Jury Nullification........ 3

A. Defendant's Age, Health, or Family Needs........ 4

B. Penalties Faced by Defendant if Convicted ........ 5

C. Government's Motivations for Investigating and Prosecuting the Case ........ 6

D. Allegations or Claims of Outreageous Government Conduct ........ 7

II. Motion to Preclude Explaining or Defining Reasonable Doubt ........ 9

III. Motion to Preclude Discovery Requests or Commentary in the Presence of the Jury ........ 10

IV. Motion to Preclude "Missing Witness" Argument ........ 11

V. Motion to Preclude Improper Impeachment of Cooperator 1 and Cooperator 2 ........ 12

A. Arrests or Conduct Not Resulting in Conviction ........ 17

B. Misdemeanor Convictions........ 18

C. Convictions More Than Ten Years Old ........ 19

D. Other "Bad" Acts ........ 20

VI. Motion in *Limine* Regarding an Entrapment Defense ........ 21

VII. Motion to Admit Business Records Under Federal Rules of Evidence 803(6) and 902(11)........ 22

VIII. Motion to Admit Self-Authenticating Domestic Public Records Under Federal Rule of Evidence 902(1)........ 25

IX. Motion to Allow the Government to Display the Firearm and Ammunition in Court at Trial. ........ 25

X. Leave to File Additional Motions ........ 27

CONCLUSION........ 27

The UNITED STATES OF AMERICA, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, respectfully moves this Court, *in limine*, for the relief requested below.[1]

**BACKGROUND**

Defendant Christopher Yates is charged with two counts of violating 18 U.S.C. § 1958(a) for soliciting Cooperator 2 to commit two murders in the Chicago area, and one count of violating 18 U.S.C. § 924(h) for knowingly transferring a firearm and ammunition, knowing that the firearm and ammunition would be used to commit a felony. Dkt. 13. On or about July 5, 2024, Cooperator 1 shared with investigators that defendant contacted Cooperator 1 to potentially solicit a murder for hire.

In July 2024, Cooperator 1 contacted HSI special agents, notifying them that defendant Christopher Yates contacted Cooperator 1 about soliciting a murder for hire. Yates, Cooperator 1, and Cooperator 2 arranged an in-person meeting on July 9, 2024 in Oak Lawn, Illinois. Yates and Cooperator 1 set up the meeting over phone calls and text messages, and the meeting was audio and video recorded. During the meeting, Yates provided Cooperator 2 with a firearm and ammunition, $250 in U.S. currency, and solicited Cooperator 2 to murder two targets, Individual A and Individual B, who were to be witnesses in an upcoming murder trial against Individual D. Defendant transferred the firearm and ammunition to Cooperator 2 so that Cooperator 2 could use the firearm and ammunition to commit murder.

[1] For purposes of efficiency and ease of reference, the government has filed its motions *in limine* in a single document. No single motion herein exceeds the 15-page limit as imposed by the Local Rules.

During the conversation, Yates described the role of the two targets in the upcoming murder trial, including whether Individual D was more interested in having Individual A or Individual B murdered. Yates concluded that "I want them both off the board. . . both of them got to fucking go . . ." Yates told Cooperators 1 and 2 that he wanted separate firearms used on Individual A and Individual B due to ballistics tracing, and discussed which murder should occur first.

Yates promised to provide more money in the future ("[A]ll I got right now is $250, whatever you charge, I'm working on that."), and additional information about Individual A and Individual B.

Between July 9, 2024 and July 28, 2024, Yates was in communication with Cooperator 1 via phone calls, text messages, and two in-person encounters, wherein Yates related to Cooperator 1 that he was gathering identifying information regarding the two intended targets to be murdered. He also conveyed his thoughts on how the murders should be committed, stating that the murder of Individual A needed to happen first, that it needed to look like a robbery, and that whoever Individual A is with also needed to be murdered.

On July 30, 2024, Yates, Cooperator 1, and Cooperator 2 met in Oak Lawn, Illinois. Yates had a series of texts and telephone calls with Cooperator 1 to set up the meeting. During the meeting, Yates provided identifying information about Individual A using his/her Facebook profile, and provided logistical information on how Cooperator 1 and Cooperator 2 could arrange an in-person meeting with Individual A by potentially soliciting Individual A for prostitution on Facebook. Yates

explained that he was in need of more time to identify Individual B, but that if defendant surveilled the area where he believed Individual B hangs out, then defendant could potentially identify him. Yates further stated that Individual B needed to be shot in the head. Yates also conveyed that Individual D was more concerned about killing Individual B than Individual A, but that Yates did not care who was murdered first, just that both of them needed to be murdered.

Law enforcement arrested Yates on July 31, 2024. Dkt. 2. A grand jury returned an indictment against Yates on August 14, 2024, charging three counts: Count One charged murder for hire as it relates to Individual A, in violation of Title 18, United States Code, Section 1958(a); Count Two charged murder for hire as it relates to Individual B, in violation of Title 18, United States Code, Section 1958(a); and Count Three charged transferring a firearm and ammunition knowing or having reasonable cause to believe that the firearm and ammunition would be used to commit a felony, in violation of Title 18, United States Code, Section 924(h). Defendant pled not guilty to the charges. Dkt. 17.

## I. MOTION TO PRECLUDE EVIDENCE OR ARGUMENT DESIGNED TO ELICIT JURY NULLIFICATION

The government respectfully moves this Court to preclude defendant from arguing or otherwise presenting evidence at trial designed to elicit jury nullification. It is improper for defendant to suggest that the jury should acquit him even if it finds that the government has met its burden of proof. *See*, *e.g.*, *United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012); *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006); *Smith v. Winters*, 337 F.3d 935, 938 (7th Cir. 2003) ("A defendant has of

course no right to ask the jury to disregard the judge's instructions ('jury nullification')."); *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'" (quoting *United States v. Anderson,* 716 F.2d 446, 450 (7th Cir. 1983))); *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant.").

Although the government cannot anticipate every form of "jury nullification" defendant may seek to inject, it moves to exclude the potential areas noted below, as well as any argument or questioning, no matter what its form, that, in effect, would "encourage a jury to acquit under any circumstances regardless of the applicable law or proven facts." *Anderson*, 716 F.2d at 450.

### A. Defendant's Age, Health, or Family Needs

Although the government acknowledges that defendant is permitted to introduce limited testimony regarding his background, the government moves to preclude evidence and argument regarding his age, health, and family so as to infer either a motive for his criminal conduct or to invoke sympathy regarding the impact of a conviction upon the defendant or his family. Such evidence is irrelevant to defendant's factual guilt and is designed for no other purpose than to invoke improper appeals for jury nullification. *See, e.g., United States v. House*, No. 14 CR 10, 2015 WL 1058019, at *2 (N.D. Ill. Mar. 6, 2015) (excluding evidence of impact of

defendant's conviction on his family members); *United States v. Shalash*, No. 11 CR 0627, 2013 WL 4820927, at *5 (N.D. Ill. Sept. 10, 2013) (excluding testimony regarding defendant's family needs as motive or excuse for criminal conduct or to invoke sympathy); *United States v. Shields*, No. 90 CR 1044, 1991 WL 236492, at *4 (N.D. Ill. Aug. 13, 1991) ("The defendants may present testimony establishing that they have families. However, the Court will not allow such testimony to be presented in detail, nor will the Court permit any testimony regarding the possible impact which a conviction might have upon any family member.").

### B. Penalties Faced by Defendant if Convicted

The Seventh Circuit has stated unequivocally that "arguing punishment to a jury is taboo." *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), *overturned on other grounds*, 526 U.S. 813 (1999); *see also United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997) ("the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored"). Argument and evidence concerning punishment are improper because the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" (footnote omitted) (quoting *Rogers v. United States,* 422 U.S. 35, 40 (1975))); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000); 7th Cir. Pattern Crim. Jury Instr. 4.08 (2023) ("In deciding your verdict, you should not consider the possible punishment for the defendant[s] [who [is; are] on trial]."). Mention of the potential penalties faced by defendant—including

possible imprisonment, restitution, or fines—would only invite the jury to consider the penal consequences of a conviction and, ultimately, nullification. Such argument should accordingly be excluded.

### C. Government's Motivations for Investigating and Prosecuting the Case

Claims of selective or vindictive prosecution are irrelevant to the merits. *United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."). Whether and why certain individuals were charged or not charged is equally immaterial. *See United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (in a case involving a prohibited narcotics transaction, "[w]hether or not [a co-arrestee] was criminally charged [did] not make the facts relating to [the defendant's] knowledge and participation in the attempted purchase more or less probable"); *United States v. Mosky*, No. 89 CR 669, 1990 WL 70832, at *1 (N.D. Ill. May 7, 1990) ("The government seeks to bar only any reference to its decisions regarding who to indict and for what acts. The government is correct that those decisions are not relevant to the charges faced by these defendants."). The subjective intentions or motivations of a government agent are also extraneous. *See, e.g., United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting that, even in the context of an entrapment defense, it was proper for the trial court to prohibit the defense from "mount[ing] an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant").

"In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Armstrong*, 517 U.S. at 465 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Accordingly, evidence bearing on the government's decision to prosecute is "extraneous and collateral" and, thus, properly excluded from trial. *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"). To the extent defendant wishes to raise these issues, he must raise them with the Court, not the jury. *See United States v. Jarrett*, 705 F.2d 198, 204-05 (7th Cir. 1983) (finding claims of selective prosecution must be raised before trial); *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (finding that "the issue of selective prosecution is one to be determined by the court"). Defendant has filed no such motion. Accordingly, evidence and argument related to these issues, in any form, should be barred by the Court.

**D. Allegations or Claims of Outrageous Government Conduct**

The Court should also preclude any evidence or argument related to so-called "outrageous government conduct." Although the government is unaware of any misconduct by government agents in this case, it nevertheless seeks to exclude any allegations of such misconduct in the presence of the jury.

Arguments pertaining to governmental misconduct are improper for two reasons. First, and most fundamentally, the Seventh Circuit has repeatedly held that "[o]utrageous government conduct is not a defense in this circuit." *United States v.*

*Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011); *see also Conley v. United States,* 5 F.4th 781, 799 (7th Cir. 2021) (describing the "uniform wall of precedent" rejecting the defense and citing cases); *United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995) ("'[T]he doctrine [of outrageous governmental misconduct] is moribund.' 'Stillborn' might be a better term, for it never had any life; and it certainly has no support in the decisions of this court, which go out of their way to criticize the doctrine." (quoting *United States v. Santana,* 6 F.3d 1, 4 (1st Cir. 1993)) (second alteration in original)).

Second, "the issue of outrageous government conduct is not an issue for the jury," but instead a matter of law that must be raised in the form of a pretrial motion for determination by the Court. *See United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) ("All of the circuits that have considered the question have held that the issue of outrageous government conduct is not a jury question.") (collecting cases). Accordingly, defendant should be precluded from defending his case by attacking the propriety of the government's conduct.

Yet, there is a "tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (quoting *Sears v. Romiti,* 50 Ill.2d 51, 277 N.E.2d 705 (1971)). In these types of cases, the "thrust of the defense is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id.* at 1347. In the face of this increasing tendency to interject themes of "government misconduct" into a defense strategy, courts have granted motions "to bar defendants from presenting evidence

or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, No. 90 CR 1044, 1991 WL 236492, *3 (N.D. Ill. 1991); *see also United States v. Boender*, No. 09 CR 186, 2010 WL 811296, at *3 (N.D. Ill. March 3, 2010); *United States v. Katz*, No. 92 CR 94, 1992 WL 137174, at *5 (N.D. Ill. June 15, 1992); *United States v. Finley*, 708 F. Supp. 906, 913 (N.D. Ill. 1989) (granting motion *in limine* to preclude evidence "designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation"). Accordingly, the government moves to bar defendant from introducing evidence or argument of outrageous government conduct.

## II. Motion to Preclude Explaining or Defining Reasonable Doubt

The government respectfully moves the Court to preclude counsel from attempting to define reasonable doubt. The Seventh Circuit has consistently held that "reasonable doubt" is a term that should not be defined by the Court or counsel. *See, e.g.*, *United States v. Hatfield*, 590 F.3d 945, 949 (7th Cir. 2010); *United States v. Thompson*, 117 F.3d 1033, 1035 (7th Cir. 1999) ("The law is clear in this circuit that it is improper for attorneys to attempt to define the term . . . ."); *United States v. Alex Janows & Co.*, 2 F.3d 716, 722-23 (7th Cir. 1993) ("It seems simple enough; we admonish counsel, do not define 'reasonable doubt' to a jury."); *United States v. Bardsley*, 884 F.2d 1024, 1029 (7th Cir. 1989); *United States v. Hall*, 854 F.2d 1036, 1039 (7th Cir. 1988) ("An attempt to define reasonable doubt presents a risk without any real benefit."); 7th Cir. Pattern Crim. Jury Instr. 1.04 (2023) (collecting cases).

"[A]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988) (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). To the contrary, any proffered definition is likely to "confuse juries more than the simple words themselves." *United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir. 1993). "Jurors know what is 'reasonable' and are quite familiar with the meaning of 'doubt.' Judges' and lawyers' attempts to inject other amorphous catch-phrases into the 'reasonable doubt' standard . . . only muddy the water." *Glass*, 846 F.2d at 387. Thus, it is "inappropriate for judges to give an instruction defining 'reasonable doubt,' and it is equally inappropriate for trial counsel to provide their own definition." *Id.*

## III. Motion to Preclude Discovery Requests or Commentary in the Presence of the Jury

The government respectfully moves this Court to preclude defendant from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters in the presence of the jury. Requests for, and motions related to, discovery made in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. *See, e.g., United States v. House,* No. 14 CR 10, 2015 WL 1058019, at *2 (N.D. Ill. Mar. 6, 2015) (citing cases); *United States v. Mandell*, No. 12 CR 842, 2014 WL 287520, at *3 (N.D. Ill. Jan. 27, 2014); *United States v. Dochee*, No. 08 CR 108-4, 2009 WL 102986, at *1 (N.D. Ill. Jan. 15, 2009) (granting the government's motion *in limine* to exclude comments on discovery because it "could create the impression that the opposing party is

withholding information."). The requests may also be without merit in the event discovery has already been tendered or is not subject to disclosure. Thus, argument related to missing evidence absent proof of bad faith is also improper. *See United States v. Folami*, 236 F.3d 860, 865 (7th Cir. 2001). Discovery requests should therefore be made to the Court or opposing counsel outside the presence of the jury so that no prejudice results to either side. *See, e.g., United States v. Gray*, No. 07 CR 166, 2010 WL 1258169, *3 (N.D. Ind. Mar. 26, 2010).

## IV. MOTION TO PRECLUDE "MISSING WITNESS" ARGUMENT

It is within the Court's discretion to prohibit argument concerning missing witnesses not under the control of either side. *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). "The reasons for not calling witnesses are so many and so complex—from . . . concern about the witness's appearance and demeanor to concern about the content of the testimony to a belief that the witness would invoke the privilege against self-incrimination—that a full exploration could take the trial far afield." *Id.* Thus, "when [a] witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992). "The traditional position, limiting comment by judge or counsel to a witness under the control of the adverse party . . . is sound." *Id.* Therefore, the government respectfully requests that the Court prohibit defendant from arguing that any relevant inference can be drawn from the fact that certain witnesses did not testify at trial.

In a similar vein, there are many reasons why the government may choose not to call every witness on its witness list. A jury could become confused, or make an improper inference, if told that the government originally listed a witness on their witness list who did not ultimately testify. Thus, defendant should not be permitted to make any argument regarding why the government did not call every witness on its witness list.

Alternatively, if the Court allows defendant to introduce evidence or argument regarding missing witnesses, the government seeks permission to respond appropriately. Ordinarily, a prosecutor may reply to "an argument by the defense that the absence of some witness counts against the prosecution" by highlighting that the defense has the same subpoena power as the government. *Sblendorio*, 830 F.2d at 1392. As the Seventh Circuit explained, "[t]he jury is entitled to know that the defendant may compel people to testify; this legitimately affects the jury's assessment of the evidence." *Id.* at 1393-94; *see also United States v. Aldaco*, 201 F.3d 979, 988 (7th Cir. 2000) ("[I]t was not improper for the prosecutor to make clear to the jury that the defendant, like the government, has the power to subpoena any witness or witnesses relevant to the case after [the defendant's] counsel had opened the door to this reply argument by the prosecution.").

## V. Motion to Preclude Improper Impeachment of Cooperator 1 and Cooperator 2

At trial, the government anticipates calling Cooperator 1 and Cooperator 2 to testify about events related to the charges in this case. In the course of discovery, the government has produced to defendant the criminal histories of Cooperator 1 and

Cooperator 2, which set forth potential grounds for impeachment. However, the mere fact that the government has produced these materials does not render them admissible. The government respectfully moves this Court to preclude defense counsel from alleging witness wrongdoing not resulting in a conviction and not involving dishonesty, which are not admissible under Rule 403, Rule 608(b), or Rule 609.

The government does not dispute that the fact of the charged offense, date, and disposition of Cooperator 1 and Cooperator 2's recent felony convictions are admissible at trial. Cooperator 1 has a 2022 felony conviction for aggravated unlawful restraint/residential burglary for which he received a 4 year sentence, and Cooperator 2 has a 2024 felony conviction for two counts of traveling with the purpose to engage in illicit sexual conduct, for which he received a 10-year sentence. Federal Rule of Evidence 609(a)(1) provides that a witness's character for truthfulness may be attacked by evidence of a criminal conviction "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year." Fed R. Evid. 609. "The law in this circuit is well settled that for purposes of impeachment by prior conviction, it is appropriate to reveal the title, date, and disposition of the offense." *United States v. Lewis*, 641 F.3d 773, 783 (7th Cir. 2011) (citing *United States v. Smith*, 454 F.3d at 707, 716 (7th Cir. 2006) (providing that "the government may identify the particular felony charged, the date, and the disposition of a prior conviction for impeachment purposes"); *United States v. White*, 222 F.3d 363, 370 (7th Cir. 2000); *United States v. Smith*, 131 F.3d 685, 687 (7th Cir.

1997). These limits are in place to ensure that the opposing party does not "harp on the witness's crime ... and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case." *Smith*, 454 F.3d at 716 (quoting *Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir. 1987)).1 "Ordinarily, the details of the prior conviction should not be exposed to the jury." *White*, 222 F.3d at 370. *See also United States v. Robinson*, 8 F.3d 398, 409 (7th Cir. 1993) (providing that "the details of the prior conviction should not have been exposed to the jury"); *Greer*, 831 F.2d at 707 (holding that it is error to admit more than the name of the crime charged, the date, and the disposition of a prior conviction for impeachment purposes).[2]

The admissibility of the facts underlying Cooperator 1 and Cooperator 2's convictions is governed not by Rule 609, but by Rule 608. *United States v. Barnhart*, 599 F.3d 737, 747 (7th Cir. 2010) (affirming district court's admission of underlying facts of defendant's theft and deceptive-practices convictions under Rule 608 as "highly relevant to Barnhart's character for truthfulness"). Rule 608 narrowly defines the circumstances in which references to prior acts may be admitted in an effort to impeach a witness, specifically limited to "[s]pecific instances of the conduct of a

[2] *Robinson* further explained:

> The [defendant's] examination must be limited to whether the defendant had previously been convicted of a felony, to what that felony was and to when the conviction was obtained. In short, the cross-examination should be restricted to the fact of the convictions, and the circumstances and details of prior criminal conduct should not be explored by the prosecutor.

*Robinson*, 8 F.3d at 409 (quoting *United States v. Dow*, 457 F.2d 246, 250 (7th Cir. 1972)) (internal citations omitted.

witness" probative of the witness's character for truthfulness or untruthfulness. FED. R. EVID. 608(b). It is within the Court's discretion to permit or exclude such cross-examination because "the possibilities of abuse are substantial," and conduct "must be sufficiently relevant to truthfulness before it can be the subject of cross-examination." *See United States v. Abair*, 746 F.3d 260, 263 (7th Cir. 2014); *United States v. Dawson*, 434 F.3d 956, 959 (7th Cir. 2006). Additionally, even if the impeaching information is relevant and appropriate for cross-examination under Rule 608, its probative value must still outweigh the danger of unfair prejudice, confusion of the issues, or misleading the jury, in order to be admissible. See FED. R. EVID. 403.

For example, in *United States v. Castro*, 788 F.2d 1240 (7th Cir. 1986), the defendants sought to inquire into the specific counts involved in the drug-selling convictions of a key government witness, described by the Seventh Circuit as having "provided potentially the most damaging evidence against the defendants." *Id.* at 1244, 1245-46. In particular, defense counsel wanted to establish that the key witness sold not only heroin but also cocaine. The district court, relying on Rule 609, refused to permit specific questions about the 1979 convictions. The Seventh Circuit agreed, explaining how the district court correctly limited cross-examination to the conviction "rather than allowing counsel to explore the details" and how "[a] court should not permit counsel to explore the details of a witness' past conviction." *Id.* at 1245-46.

With respect to Cooperator 1, the government acknowledges that defense counsel may elicit testimony of the crime charged (aggravated unlawful

restraint/residential burglary), the date of disposition (October 28, 2022), and the disposition (guilty). With respect to Cooperator 2, the government acknowledges that defense counsel may elicit testimony of the crime charged (travel with the purpose to engage in illicit sexual conduct), the date of disposition (March 22, 2024), and the disposition (guilty). This is in line with the Seventh Circuit precedent cited above, and any additional information would go beyond Rule 609. Any further cross-examination as to details of the conduct, moreover, would be improper under Rules 608 and 609. The underlying facts of Cooperator 1 and Cooperator 2's convictions do not relate to their character for truthfulness. Neither of the offenses were related to the charged murder-for-hire. Allowing defendant to wade into the facts of Cooperator 1 and Cooperator 2's convictions would improperly "shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case." *Smith*, 454 F.3d at 716. Further, even if the underlying facts of Cooperator 1 and Cooperator 2's convictions somehow related to their character for truthfulness, which they do not, the potential for unfair prejudice would far outweigh the probative value related thereto. The facts of an unlawful restraint and residential burglary conviction (Cooperator 1) and traveling to engage in illicit sexual conduct conviction (Cooperator 2) would certainly engender emotional response from the jury, particularly when the facts of those cases are not relevant to the charged offense.

Although the convictions referenced above are admissible for the limited purpose just described, other arrests, convictions, and "bad acts" by these witnesses are not admissible. For example, both cooperating witnesses have prior arrests that

did not result in convictions. In addition, Cooperator 1 has three prior misdemeanor convictions relating to retail theft and a prior felony conviction from 2001 for manufacturing/dealing in controlled substances and selling controlled substances near a school or park, for which he received a 4 year concurrent sentence. As discussed below, none of these prior arrests or convictions should be admitted at trial.

### A. Arrests or Conduct Not Resulting in Conviction

By its express terms, Rule 609 permits evidence only of convictions, not arrests.[3] Any marginal relevance of such arrests is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury. If the jury is presented with references to or evidence of the witness's arrests, the jury may improperly conclude that it need not give the same weight to the witness's testimony as it would to witnesses who have not been arrested. This conclusion would be improper and would cause undue prejudice to the government's case.

Nor are arrests or ramifications short of conviction admissible under Fed. R. Evid. 608(b). Rule 608(b) provides that specific instances of past conduct may be inquired into on cross-examination if and only if they concern the witness's character for truthfulness. Courts have construed Rule 608(b) to restrict cross-examination on prior arrests absent special facts bearing on the witness's character for the specific trait of truthfulness. *See Cruz v. Safford*, 579 F.3d 840, 844-45 (7th Cir. 2009)

[3] More specifically, Rule 609 allows for the admission of a witness's felony conviction for purposes of impeachment under certain specified circumstances. Under the Rule, "[f]or the purpose of attacking the credibility of a witness, evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted. . . ." Fed. R. Evid. 609.

(upholding exclusion of prior arrests because they had no bearing on truthfulness); *United States v. Mitchell*, 502 F.3d 931, 967 (9th Cir. 2007) (upholding exclusion of prior theft, not resulting in a conviction, because it has no bearing on truthfulness); *United States v. McCarroll*, No. 95 CR 48, 1996 WL 99442, at *12 (N.D. Ill. Mar. 4, 1996) (excluding arrests for battery and theft and stating that, "[i]n general, arrests and charges which did not lead to a conviction cannot be used for impeachment."). Even then, defendant should be limited to inquiring only about the specific conduct that relates to truthfulness, and should not be permitted to elicit that the witness was arrested for such conduct. *See Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 626 n.7 (7th Cir. 2003). None of Cooperator 1 or Cooperator 2's prior arrests relate to truthfulness and therefore, evidence of these arrests are inadmissible at trial.

**B. Arrests or Conduct Not Resulting in Conviction**

Similarly, the Court should preclude cross-examination regarding misdemeanor convictions that are not probative of truthfulness. Rule 609(a)(2) allows the party to impeach a witness using a misdemeanor conviction, but only if "establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Even then, these past instances may not be proved by extrinsic evidence. See Fed. R. Evid. 608(b). Under Rule 608(b), the defense also may impeach the witness using a misdemeanor conviction, but again, only if the specific acts in question are "probative of the [witness's] character for truthfulness or untruthfulness." The Advisory Committee Notes explain that Rule 609(a)(2) is generally limited to "perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretenses," and

similar crimes. Cooperator 1's three convictions for misdemeanor retail theft in 2019 are not probative of truthfulness. *See, e.g., Kunz v. DeFelice*, 538 F.3d 667, 675 (7th Cir. 2008) (retail theft not act of dishonesty under Rule 609). They are therefore inadmissible.

**C. Convictions More Than Ten Years Old**

Cooperator 1's September 17, 2001 convictions for manufacture/dealing in controlled substances and selling controlled substances near a school or park should also be excluded at trial. Rule 608(b) permits cross-examination regarding a witness's character for truthfulness or untruthfulness. A conviction for a narcotics offense has no bearing on a witness's truthfulness and should therefore be excluded under Rule 608(b). *See United States v. Robinson*, 956 F.2d 1388, 1397 (7th Cir 1992); *see also United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007); *United States v. Apperson*, 441 F.3d 1162, 1195-96 (10th Cir. 2006) (evidence of witness's involvement in drug operation not proper impeachment under Rule 608(b)); *United States v. Wilson*, 244 F.3d 1208, 1218 (10th Cir. 2001) (holding that drug-related crimes "have no relation to truth or untruth"); *United States v. Clemons*, 32 F.3d 1504, 1511 (11th Cir. 1994 ("We do not agree that the question whether Smith ever used or sold drugs was probative of his credibility as a witness.").

Similarly, Cooperator 1's prior narcotics convictions are not admissible pursuant to Rule 609. Rule 609(b) limits the admission of prior convictions to those that occurred within 10 years of the witness's conviction or the witness's release from confinement, whichever is later. Cooperator 1 began a period of supervision for this offense by, at the latest, October 18, 2004, over 20 years ago. Additionally, this

conviction's probative value does not substantially outweigh its prejudicial effect. The government does not expect there to be any discussion of his participation in drug trafficking such that his prior conviction would be probative of his credibility as a witness. Under these conditions, evidence of Cooperator 1's 2001 narcotics convictions should not be admitted at trial.

**D. Other "Bad" Acts**

Cross-examination regarding prior bad acts that are not probative of truthfulness also should be barred pursuant to Rule 608(b) and Rule 611, as well as Rule 403. As noted above, pursuant to Rule 608(b) of the Federal Rules of Evidence, "except for criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." *See also* Fed. R. Evid. 611 ("Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility."). In addition to causing prejudice, cross examination of this type may also confuse the issues or mislead the jury, as well as cause delay. Fed. R. Evid. 403.

Consistent with the Federal Rules of Criminal Procedure and past precedent, courts have excluded cross-examination into prior alleged bad acts of witnesses, including even allegations of violence. *See, e.g., United States v. Holt*, 486 F.3d 997, 1001-02 (7th Cir. 2007) (defendant correctly prohibited from cross-examining an officer based on his thirty-day suspension from police force for conduct not relevant to issue of truthfulness); *United States v. Miles*, 207 F.3d 988, 994 (7th Cir. 2000) (court "correctly refused" to let defendant cross-examine a witness regarding his

oversight in failure to register a gun because it did not "implicate fraud, deceit, or dishonesty."); *United States v. Henderson*, No. 11 CR 74, 2012 WL 698796, at *2 (N.D. Ill. Mar. 1, 2012); *United States v. Tate*, 633 F.3d 624 (8th Cir. 2011) (disallowing allegation of assault as "not probative of [the witness]=s character for truthfulness"); *United States v. Apperson*, 441 F.3d 1162, 1195-96 (10th Cir. 2006) (evidence of witness's involvement in drug operation not proper impeachment under Rule 608(b)); *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987) ("[W]hether or not [the witness] ever sold drugs is not probative of his truthfulness[.]").

So that the Court can make the appropriate rulings, before a witness testifies, and outside the presence of the jury, defense counsel should identify the prior "bad acts" about which they intend to cross examine a given witness and demonstrate how that conduct is probative of truthfulness. This procedure will ensure that any alleged bad acts are not improperly communicated to the jury before the Court has the opportunity to determine whether such alleged bad acts are the subject of proper impeachment.

## VI. MOTION IN *LIMINE* REGARDING AN ENTRAPMENT DEFENSE

The government anticipates introducing a number of recorded conversations involving defendant and Cooperator 1 and Cooperator 2. While the government is unaware of what defense defendant intends to pursue, as relevant to the instant motion, to date, the defense has provided no notice of an entrapment (or any other) defense. The government asks the Court to require defendant to present a pre-trial proffer of evidence that he would introduce that would support an entrapment defense.

The affirmative defense of entrapment requires "proof of two elements: (1) government inducement of the crime; and (2) lack of a defendant's predisposition to engage in criminal conduct." *United States v. Orr*, 622 F.3d 864, 868 (7th Cir. 2010). "A defendant must proffer sufficient evidence of both elements before the defense may be asserted." *Id*. To proffer "sufficient evidence" in response to a motion in *limine*, a defendant must "provide sufficient evidence that a rational jury could infer that the defendant had been entrapped." *United States v. Plowman*, 700 F.3d 1052, 1057 (7th Cir. 2012); *see also United States v. Haddad*, 462 F.3d 783, 789 (7th Cir. 2006); *Mathews v. United States*, 485 U.S. 58, 61 (1988) (a defendant is entitled to an entrapment instruction "whenever there is sufficient evidence from which a reasonable jury could find entrapment"). The district court must accept a defendant's evidence as true when making a pretrial ruling on whether the defendant has proffered sufficient evidence to present the defense at trial. *Plowman*, 700 F.3d at 1057. Thus, the government requests that this Court require defendant to present a pre-trial proffer of evidence that he would introduce that would support an entrapment defense and, without such a pre-trial offer, should preclude defendant from arguing an entrapment defense until or unless defendant makes a prima facie showing of entrapment.

## VII. MOTION TO ADMIT BUSINESS RECORDS UNDER FEDERAL RULES OF EVIDENCE 803(6) AND 902(11)

The government hopes to reach stipulations on the authenticity and admissibility of business records such as cellular data, phone subscription records, and video surveillance from a grocery store. In the event that stipulations are not

reached, the government moves to admit business records pursuant to Federal Rule of Evidence 803(6) and 902(11). Under Federal Rule of Evidence 902(11), certified copies of domestic business records are self-authenticating if the party offering the records provides the adverse party written notice and allows the adverse party to inspect the exhibit and certification, allowing the party to challenge the authenticity of the records. Under Federal Rule of Evidence 803(6), the records are an exception to the hearsay rule if the following conditions exist:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of the information nor the method or circumstances of preparation indicate a lack of trustworthiness.

The Seventh Circuit has consistently upheld the admission of business records through business certifications, pursuant to Rule 803(6) and 902(11). *See, e.g., United States v. Green*, 648 F.3d 569, 579-70 (7th Cir. 2011) (noting that admission of pre-certified business records under Rules 803(6) and 901(11) does not violate the Confrontation Clause because 902(11) certificates are not testimonial.); *United States*

*v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (affirming the admissibility of records using 902(11) certifications in light of *Crawford*.)

The government expects to introduce records at trial such as phone records, cellular location data, and video surveillance from a grocery store. If the government introduces these records, the government intends to rely on the business records certifications from those entities, specifically, T-Mobile and Kroger-Marianos. The certification supporting the records from Kroger-Marianos is attached as Exhibit A and has been produced to defendant; the underlying T-Mobile business records certification is in the process of being requested, and the government will provide that to defendant and the Court when they are available.

The government thus moves the Court to find, pursuant to Federal Rule of Evidence 104, that these records are authentic business records within the meaning of Federal Rule of Evidence 803(6). Rule 104 authorizes the Court to determine in advance of trial "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence." This rule applies to all preliminary determinations, including the question of whether documents fall within the "business records exception" to the hearsay rule. *See United States v. Kasvin*, 757 F.2d 887, 893 (7th Cir. 1985) (affirming trial court's preliminary determination pursuant to Rule 104 that business records were admissible pursuant to Rule 803(6)).

Thus, the government respectfully requests that this Court find, under Rule 104, that the identified business records, and other records for which a 902(11)

certification is presented, fall within the "business records exception" to the hearsay rule. Admission of these documents through 902(11) certifications will save the parties, the Court, and the jury members significant time and resources, as the certifications will obviate the need for live witness testimony from several witnesses.

## VIII. Motion to Admit Self-Authenticating Domestic Public Records Under Rule 902(1)

Again, the government hopes to reach stipulations on the authenticity and admissibility of certain domestic public records, such as Illinois Secretary of State records. However, in the event stipulations are not reached, the government respectfully moves this Court to admit domestic public records under Federal Rule of Evidence 902(1). Under that rule, a document that bears "(A) a seal purporting to be that of . . . the United States; any state . . . a political subdivision . . . or a department, agency, or officer [thereof]; and (B) a signature purporting to be an execution or annexation" is self-authenticating. These documents will each contain seals and signatures attesting to authenticity. Such evidence is self-authenticating under Rule 902(1), and therefore admissible without the need for live testimony.

## IX. Motion to Allow the Government to Display the Firearm and Ammunition in Court at Trial.

At trial, the government intends to bring the firearm and ammunition that the defendant is charged with transferring into court to display to witnesses and the jury. The government anticipates that HSI Special Agent Michael Medina will transport the firearm and ammunition into the Dirksen Federal Courthouse and to the courtroom for trial. As part of its standard protocol, the United States Marshals Service requests that the Court issue an order permitting the firearm and

ammunition to be brought into the courthouse and that the Court's order include language stating: "The firearm and ammunition shall be rendered safe, inoperable, and unable to discharge. The United States Marshals Service may impose any restriction to ensure that the firearms, magazine, and ammunition are rendered safe."

For the Court's convenience, the government will submit a proposed order regarding the display of a firearm, magazine, and ammunition at trial to the Court's proposed order mailbox.

### X. Leave to File Additional Motions

As the government continues to prepare for trial over the next three months, it anticipates that additional evidentiary issues, specifically issues unique to particular witnesses that the government learns during trial preparation, will arise requiring additional motions and rulings by the Court. In these instances, the government requests leave of Court to file additional motions related to such issues up to and during trial.

## CONCLUSION

For the reasons stated above, the government respectfully asks the Court to grant the government's consolidated motions *in limine*.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: /s/Kirsten Moran
KIRSTEN MORAN
MEGAN DONOHUE
Assistant United States Attorneys
United States Attorney's Office
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

Dated: March 19, 2026